# IN THE SUPREME COURT OF IOWA

No. 22–0199

Submitted February 21, 2024—Filed May 24, 2024

**STATE OF IOWA,**

Appellee,

vs.

**ABEL GOMEZ MEDINA,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

The defendant appeals his criminal convictions after the district court permitted a key witness to testify via closed-circuit television. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Alexander Smith (argued) and Benjamin D. Bergmann of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers (argued) and Sheryl Soich, Assistant Attorneys General, for appellee.

**McDermott, Justice.**

Before Abel Gomez Medina's trial for sexual abuse and indecent contact with a child, the district court granted the State's motion to permit his accuser—a minor—to testify by closed-circuit television. When the trial eventually occurred, his accuser testified over the course of two days. On the second day of her testimony, she turned eighteen years old. Gomez Medina objected at trial, arguing that permitting her to provide closed-circuit testimony the second day—when she was a legal adult—violated Iowa's statute authorizing closed-circuit testimony. The district court overruled Gomez Medina's objection, and the jury ultimately convicted him. On appeal, Gomez Medina argues that permitting the alleged victim's closed-circuit testimony when she was eighteen violated Iowa's limited court testimony statute and the United States Constitution's Confrontation Clause.

I.

A.

Gomez Medina lived with his wife and four children (three were his step-children and one was with his wife) in a single-family home. One morning before school in 2019, Gomez Medina took away the phone of his fifteen-year-old step-daughter, Dorothy (a pseudonym), after learning that she'd been exchanging sexually explicit messages with a boy. Gomez Medina then drove Dorothy to school. Her day started with band class. After band, she went to the school counselor's office and reported to the counselor that Gomez Medina had been sexually abusing her. She soon thereafter met with a forensic interviewer to whom she disclosed additional details, including that Gomez Medina had been sexually abusing her since she was eleven years old.

In her testimony at trial, Dorothy provided graphic details of Gomez Medina's sexual abuse, which Dorothy testified started when she was in fifth

grade. She testified that by the time she reported the sexual abuse to the school counselor in ninth grade, the abuse was happening about five times a week. According to Dorothy, the abuse would usually occur in the early morning hours after her mother left for work. Because Gomez Medina feared she might become pregnant, at some point he started buying her "morning after" contraceptive pills, which he directed her to take as often as every other week.

Dorothy testified that before her disclosure to the school counselor, the only other person she had told about the sexual abuse was a friend, and she asked that friend to keep it a secret. Dorothy said she "didn't want everyone finding out" because she was "worried that everything would change in the household" and her mother "wouldn't believe [her]." She testified that when her mother picked her up from school on the day she reported Gomez Medina's abuse to the counselor, her mother hardly spoke to her, wouldn't look at her, and didn't try to comfort her or ask questions about what had happened.

Gomez Medina's eleven-year-old son and Dorothy's stepbrother, Frank (also a pseudonym), stated in a forensic interview that after hiding under a bed, he witnessed Gomez Medina and Dorothy doing inappropriate things. He said he'd seen Gomez Medina and Dorothy "doing it," saw the two of them naked together, and witnessed Dorothy "on top." Frank reported that he told his mother about it and that she got upset with Dorothy. But in Frank's deposition testimony later, he stated at times that he didn't remember these things happening in the bedroom. He repeatedly stated in his deposition that he didn't want to talk about it. Frank was ultimately determined unavailable to testify, and the district court thus allowed the State to present both Frank's forensic interview and deposition testimony at trial.

A group of witnesses testified on Gomez Medina's behalf that they never

saw anything inappropriate between Gomez Medina and Dorothy. These witnesses included Dorothy's mother; Gomez Medina's father, who lived with the family for a time; Dorothy's maternal grandfather, who lived nearby; Dorothy's aunt; and Dorothy's younger sister, with whom Dorothy shared a room.

B.

Before the trial, in May 2020, the State moved to permit closed-circuit testimony by Dorothy and Frank under Iowa Code § 915.38 (2019), arguing that "closed-circuit testimony is necessary to protect the minor witnesses [Dorothy] and [Frank] from trauma caused by in-person testimony." Gomez Medina resisted. At a hearing on the motion, the court heard testimony from the guardian ad litem for both Dorothy and Frank and from Dorothy's therapist.

The guardian ad litem testified that requiring Dorothy and Frank to testify in the presence of Gomez Medina would cause trauma and affect their ability to testify truthfully. She opined that the stress each would suffer would be more than the usual nervousness or excitement someone experiences when testifying in court.

Dorothy's therapist testified that Dorothy suffers from anxiety and depression and that she experiences post-traumatic stress disorder because of the sexual abuse she endured. Her therapist reported that Dorothy had expressed nervousness about seeing Gomez Medina in public places. And facing Gomez Medina in a courtroom, according to Dorothy's therapist, would create emotional distress beyond the typical nervousness or excitement from testifying, and Dorothy's fear of providing testimony at trial had already caused enough stress to require additional therapy sessions. Dorothy's therapist opined that closed-circuit testimony is necessary to protect Dorothy from further trauma. She stated that Dorothy "wants to be able to speak her truth," but that she fears Dorothy may be retraumatized with worsened conditions if the testimony "is not

done under a way that [Dorothy] can be able to discuss these concerns." On cross-examination, her therapist testified that Dorothy knew the difference between telling the truth and lying, had stood up to her mother about the allegations, and continued attending school regularly and maintaining high grades even after reporting the abuse.

As the motion remained pending, the trial was delayed several times for various reasons (including issues related to the COVID-19 pandemic). In August 2021, the district court granted the State's motion for closed-circuit testimony for Dorothy but denied it for Frank. The district court order noted that the State had proven closed-circuit testimony was necessary to protect Dorothy from further trauma and that testifying in Gomez Medina's presence would impair her ability to communicate, citing Iowa Code § 915.38(1). But the district court held that the State had failed to prove this for Frank. The district court limited the duration of Frank's testimony to no more than one hour due to his young age, but it did not limit the duration of Dorothy's testimony.

The trial ultimately began in late October 2021 and lasted six days. On the third day of the trial, Dorothy took the stand in the afternoon. She didn't finish her testimony before the court recessed for the day, however, and thus needed to return to complete her testimony the next morning. On the fourth day of the trial, before Dorothy began her second day of testimony, the district court addressed the fact that on the first day of her testimony, Dorothy was seventeen years old, but on the second day of her testimony—her birthday—she turned eighteen.

Gomez Medina objected to Dorothy's continued closed-circuit testimony on the second day. He argued that the statute the district court initially relied on to permit her closed-circuit testimony—Iowa Code § 915.38—only allowed it for minors. Since Dorothy was no longer a minor, the statute barred further

closed-circuit testimony, according to Gomez Medina. The district court disagreed, noting that § 915.38(1)(*c*) permits closed-circuit testimony for a victim or witness with a mental illness, regardless of that person's age, and overruled the objection.

Dorothy thus continued to testify by closed-circuit television and concluded her testimony that morning. The jury found Gomez Medina guilty of one count of sexual abuse in the second degree under Iowa Code § 709.3(1)(*b*); four counts of sexual abuse in the third degree under § 709.4(1)(*a*), (*b*)(2), and (*b*)(3); and one count of indecent contact with a child under § 709.12. The district court sentenced him to sixty-seven years in prison with a mandatory minimum of 70% of time served on the second-degree sexual abuse conviction before being eligible for parole. Gomez Medina appealed.

Gomez Medina, who is represented by different counsel in his appeal, raises three arguments. First, he argues that allowing Dorothy to testify via closed-circuit television violated both Iowa Code § 915.38(1) and the Confrontation Clause of the United States Constitution. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). Second, he argues that the district court abused its discretion by allowing the prosecutor to note during closing argument that Dorothy's mother told Frank that Dorothy was lying about the sexual abuse. And finally, he argues that the district court erred in granting the State's motion in limine to exclude two 911 call logs depicting calls made by Dorothy's mother in the months after Dorothy reported the sexual abuse describing Dorothy's erratic behavior at home.

We transferred the case to the court of appeals. It affirmed Gomez Medina's convictions. On the first argument, the court of appeals held that permitting Dorothy's closed-circuit testimony satisfied constitutional requirements while

she was a minor, and that by meeting the requirements under Iowa Code § 915.38(1)(*c*) after she turned eighteen, Gomez Medina's claim of a Confrontation Clause violation similarly failed. On the second issue, it concluded that no prosecutorial error occurred during closing argument, instead characterizing the prosecutor's remarks as "more a comment on testimony" than an improper attack on a witness's credibility. And on the third issue, the court of appeals found no abuse of the district court's discretion in excluding the 911 call logs because the calls had low probative value but a high likelihood of causing the jury to make a decision on an improper basis. Gomez Medina filed an application for further review of the court of appeals ruling, which we granted.

## II.

Turning to the first issue, Gomez Medina argues that the district court erred in permitting Dorothy to testify by closed-circuit television after she had turned eighteen. He argues that Dorothy was an adult on the second day of her testimony, and that the Confrontation Clause of the United States Constitution requires face-to-face confrontation by adult witnesses.

We review constitutional claims de novo. *State v. Tucker*, 982 N.W.2d 645, 652 (Iowa 2022). On our de novo review, we conclude that Gomez Medina failed to preserve error on his Confrontation Clause argument concerning Dorothy's testimony after she turned eighteen.

Before Dorothy began her second day of testimony, the district court addressed her change in age and whether she should still be permitted to testify by closed-circuit television. The court stated:

> The Court wanted to set for the record the issue that needs to make a record about. Specifically, overnight, [Dorothy] had her 18th birthday, and she became of majority age overnight. As a result, that comes into play and with regards to Iowa Code section 915.38 because that, in part, deals with witnesses' minority.

Previously, the Court issued a ruling concerning her ability to testify remotely, and that was premised upon the fact that she was at that point, and at the time that she was anticipated to be proffered as a witness was going to be of minor age.

Obviously, the circumstance concerning that has changed, and as a result, the Court wanted to make a record as far as the manner in which to proceed currently.

It's the Court's understanding that the defense had issue -- has had issue, and I'll turn to [defense counsel] here in just a moment, as to proceeding once the individual turned the majority age as she has here.

With that, I guess, I'll turn to you, [defense counsel]. What are the defense's concerns in reference to the manner in which to present the testimony of [Dorothy]?

In response, Gomez Medina's lawyer made the following argument to the district court:

Thank you, Your Honor.

Under 915.38, I believe the statute applies only to a minor, and as of today, [Dorothy] is no longer a minor, and so the code section 915.38 would not apply, which is what the Court ruled on -- or used in its authority to allow this closed-circuit process that we've been using throughout this case. So that is where the defense stands on how -- if we can proceed in this same method under the ruling that you have entered on [August 20, 2021].

The district court then asked Dorothy a series of questions about her mental health diagnoses and medications, after which both the prosecution and defense were able to question Dorothy to put on evidence concerning whether continuing her testimony through closed-circuit television was proper. The prosecutor followed up with a series of questions along the same lines. Defense counsel had no questions.

The district court announced that it would permit Dorothy to continue to testify by closed-circuit television and elaborated on its reasons. It first noted that unexpected delays at trial had caused Dorothy's testimony to extend into a second day even though the pretrial order had only contemplated her closed-

circuit testimony as a minor. The district court concluded that even though Dorothy had turned eighteen, a different paragraph of the statute— § 915.38(1)(*c*)—justified permitting her to testify by closed-circuit television because of her mental illnesses. The district court specifically found that Dorothy has "a documented mental illness of PTSD as well as depression, that it is necessary for her, for her mental health and well-being, to be able to present the testimony via closed-circuit."

It concluded that Dorothy would suffer trauma not merely because she was testifying in a courtroom in general, but because of Gomez Medina's specific presence in the courtroom. The emotional distress Dorothy would suffer by being in Gomez Medina's presence, the district court explained, was significant and more than the regular nervousness or excitement associated with testifying against a criminal defendant in court. The district court further observed that the nature of Dorothy's trauma would be the same regardless of her age.

When given an opportunity to respond, defense counsel focused solely on the fact that the reasons for the trial delays were not Gomez Medina's fault. Defense counsel offered no substantive remarks on the closed-circuit testimony question. At no point in the proceedings that morning did anyone suggest that Dorothy's testimony as an eighteen-year-old violated the Confrontation Clause of the Federal or State Constitutions. The arguments instead focused only on whether Dorothy's testimony complied with Iowa Code § 915.38.

We require that a party raise an issue and that the district court rule on it before we consider the issue on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We are an error-correction court. Iowa Const. art. V, § 4 (stating the supreme court "constitute[s] a court for the correction of errors at law"); Iowa Code § 602.4102(1) (same). If an issue was never presented to the district court to rule on, and if the district court did not in fact rule on it, we lack any "error"

to correct. Had the defendant raised the argument, we don't know how the district court would have ruled on it.

Although Gomez Medina resisted the State's pretrial motion filed in 2020 under both the Confrontation Clause and § 915.38, those arguments addressed only Dorothy's testimony as a *minor*. Dorothy's status as an adult never came up when the parties addressed the State's pretrial motion to permit closed-circuit testimony. As the district court noted in its ruling during the trial, at the time the pretrial motion was argued and decided, it apparently hadn't occurred to anyone that Dorothy might not give her testimony until after she'd turned eighteen. Gomez Medina does not argue on appeal that the district court erred in permitting Dorothy's closed-circuit testimony while she was seventeen, and he thus does not allege error in the district court's pretrial ruling that focused only on Dorothy's testimony as a minor.

During the trial, Gomez Medina presented only a statutory argument under § 915.38 for his objection to Dorothy's testimony on the second day. We find that the district court properly applied the statute to permit Dorothy's closed-circuit testimony. Section 915.38 provides in relevant part:

> 1. *a.* Upon its own motion or upon motion of any party, a court may protect a minor . . . from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate, by ordering that the testimony of the minor be taken in a room other than the courtroom and be televised by closed-circuit equipment for viewing in the courtroom. However, such an order shall be entered only upon a specific finding by the court that such measures are necessary to protect the minor from trauma. Only the judge, prosecuting attorney, defendant's attorney, persons necessary to operate the equipment, and any person whose presence, in the opinion of the court, would contribute to the welfare and well-being of the minor may be present in the room with the minor during the minor's testimony. The judge shall inform the minor that the defendant will not be present in the room in which the minor will be testifying but that the defendant will be viewing the minor's testimony through closed-circuit television.

   *b.* During the minor's testimony the defendant shall remain in the courtroom and shall be allowed to communicate with the defendant's counsel in the room where the minor is testifying by an appropriate electronic method.

   *c.* In addition, upon a finding of necessity, the court may allow the testimony of a victim or witness with a mental illness, an intellectual disability, or other developmental disability to be taken as provided in this subsection, regardless of the age of the victim or witness.

Iowa Code § 915.38(1).

We review the district court's application of § 915.38 for correction of errors at law. *See State v. Rupe*, 534 N.W.2d 442, 444 (Iowa 1995). Under this standard of review, "we are bound by 'the district court's well-supported factual findings' but not its legal conclusions." *State Pub. Def. v. Iowa Dist. Ct.*, 886 N.W.2d 595, 598 (Iowa 2016) (quoting *State Pub. Def. v. Iowa Dist. Ct.*, 745 N.W.2d 738, 739 (Iowa 2008)).

The district court's decision to permit Dorothy's closed-circuit testimony on the second day was based on the evidence presented at the pretrial hearing at which both Dorothy's guardian ad litem and her therapist testified. Again, the guardian ad litem testified that Dorothy would be traumatized if testifying in the presence of Gomez Medina, that this trauma would affect her ability to testify truthfully, and that the stress she would suffer from would be more than mere nervousness or excitement. Dorothy's therapist testified that Dorothy suffers from post-traumatic stress disorder, anxiety, and depression because of the abuse she endured, and that closed-circuit testimony was necessary to protect her from further trauma. The district court granted the State's request to permit Dorothy to testify via closed-circuit television, but it denied the request to permit Frank to testify via closed-circuit. Frank did not present to the district court with the same level and range of underlying mental illnesses as did Dorothy, as carefully determined by the court.

In granting the State's request to permit Dorothy to continue testifying via closed-circuit television under § 915.38(1)(*c*), the district court recited Dorothy's "documented mental illness of PTSD as well as depression" and concluded that "it is necessary for her . . . mental health and well-being, to be able to present the testimony via closed-circuit." We find substantial support in the record for the district court's factual findings. Relying on those findings, we conclude that Gomez Medina has failed to show that the district court erred in applying § 915.38(1)(*c*) and permitting Dorothy to provide closed-circuit testimony.

### III.

When we grant further review, we have discretion to let the court of appeals decision stand on specific issues. *State v. Doolin*, 942 N.W.2d 500, 506–07 (Iowa 2020). We do so on Gomez Medina's arguments that the district court abused its discretion by allowing the prosecutor to comment during closing argument that Dorothy's mother told Frank that Dorothy was lying, and by excluding 911 call logs.

For these reasons, we affirm Gomez Medina's convictions.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**